This video is a derivative work of the Center for Autonomous Vehicle Research and Development, Inc.  This video is a derivative work of the Center for Autonomous Vehicle Research and Development, Inc. This video is a derivative work of the Center for Autonomous Vehicle Research and Development, Inc. This video is a derivative work of the Center for Autonomous Vehicle Research and Development, Inc.  Mr. Smith, I think I didn't say we'll hear argument in BICOR against SynQor 1578. Thank you, Your Honor. May it please the Court, Matthew Smith for the appellant, BICOR Corporation. I'd like to start off by addressing the anticipation argument and the Board's errors there under. The Board made three findings with regard to the anticipation issue. The first finding was that the embodiments of Figure 1 of Steigerwald 090 are discrete and isolated from the embodiments of Figure 4 of Steigerwald 539, which is the incorporated patent, and therefore there was no anticipation. In reasoning to that point, the Board found that there was nothing in Steigerwald 090 that urged the swapping around of regulators in Figure 4 of Steigerwald 539 from where they are before the capacitance-multiplying converter 20 to after the capacitance-multiplying converter, where they are in fact in Steigerwald 090 Figure 1. And I submit to you that that is actually true. The Steigerwald 090 doesn't urge that. Steigerwald 090 just doesn't. That is the result of Steigerwald 090 Figure 1. That's what's shown there. And that is what, in fact, SynQor has admitted on page 29 of their briefing, where they say, in Steigerwald 090, as you can see from the figure, the regulators aren't in front. There are multiple regulators downstream and back. Now, the linchpin of this swapping around, the thing around which the swapping around is. I'm sorry. Your point is that the 090 already shows the order that is claimed in the patent that's at issue here, so they didn't need anything else to show that order. The only thing that they needed to add to the 090 was the replacement of one kind of rectifier with another. Yes, the synchronous rectifiers. That's exactly right, Your Honor. And that was the rejection that the examiner adopted. And it's probably good just to reiterate that because I think it simplifies a lot of the arguments in the briefing if we focus on the rejection that the examiner adopted. The examiner rejected the anticipated claims over an alternative to Figure 1 of Steigerwald 090. And the alternative was Figure 1 of Steigerwald 090, but replacing the diodes with synchronous rectifiers per that statement in column 4 of Figure 539. Sorry, Steigerwald 539, which creates those alternative embodiments. And the reason that that alternative embodiment statement applies to the patent into which it has been incorporated is because exactly the same circuit is being used in Figure 1 of Steigerwald 090. That's the capacitance multiplying converter 20. You'll see it in Figure 4 of Steigerwald 539, in Figure 6 of Steigerwald 539, and in Figure 1 of Steigerwald 090. Can I ask you whether I've misunderstood something? In the 090 in column 2, there's a reference to around line 23, capacitance multiplying converter 20. Yes. I didn't see the number 20 in either of the two figures in the 090, which suggests to me that it has to be referring to Figure 4 of the 539.  And I think that was a reasonable thing for Steigerwald to do because he had incorporated the 539 patent by a reference. So the person that was drafting it, I'll just say it was Steigerwald, was able to refer back to those figures when using the reference numeral 20. But you're right, it doesn't appear in Figure 1 of Steigerwald 090. And we also know that the topology of the circuit is the same. The description of it that you find in column 2, lines 15 to 33 of Steigerwald 090, is the same as it is in Steigerwald 539, down to the reference numerals like transistor, sorry, transformer 24, transformer 26, transistors QA, QB, all of that stuff is the same, with the exception that there are multiple secondaries in Steigerwald 090. So he's taken the secondary side and reproduced it a number of times, but it is the same circuit. And that is in fact what Sincor argued in the prior Murata re-examination, where Sincor said Steigerwald 090 has a capacitance-multiplying circuit, which is further described in Steigerwald 539. That's the opposite of the position that Sincor is taking in this case. And they did that in order to attach characteristics that they liked from the Casey article, which is incorporated in Steigerwald 539, ultimately through two incorporations by reference to Steigerwald 090's embodiment. Now what Sincor is saying and what the board ultimately found was, these are really discrete, separate, isolated embodiments, and they don't have that much to do with each other. If, however, you apply incorporation by reference law correctly, as I think the board did not do, in Steigerwald 539, the text of it is incorporated and integrated into Steigerwald 090, a person of ordinary skill in the art reading those two together, reads the description of the capacitance-multiplying converter, reads the alternative embodiment statement, and then moves on to Figure 1 of Steigerwald 090, sees exactly the same circuit with exactly the same diode. There's no way you don't apply that alternative embodiment statement to Steigerwald 090. Can I ask, if you were right about the anticipation because of a combination of incorporation by reference and enough understanding of what the joined documents would teach, does that require a reconsideration of the obviousness rulings, either all of them or at least the non-Cobos-Pressman one? Yes, I think it does, Your Honor, for a couple of reasons. The first is that the board denied some of the obviousness rejections based on the deficiency they found in the underlying Steigerwald documents. So, for example, Claims 24-26, the board found that there was no motivation to put the synchronous rectifiers from Steigerwald 539 in Steigerwald 090. Obviously, if Steigerwald 090, as an integrated document with Steigerwald 539, teaches all of those elements, then that question of motivation just falls aside. I think in your brief you were arguing that we should vacate and remand and let the board or let the examiner make that decision in the first place. If we decide that we should combine the two Steigerwalds, right, and you're telling us that not only do we combine, but that ordinary artisan would have no trouble at all, as the presiding judge said, reaching a conclusion with regard to what the combined addends teach, you're asking us to reverse on 102, right? Yes, we are asking you to reverse on 102. Why do we lack the tools to reverse on the obviousness rejections that were built on the misunderstanding of Steigerwald? Don't get me wrong, I'm fine with you reversing those. But you didn't mention that in your brief. No, we didn't mention that in our brief. And what I was trying to do was be fair about the level of factual inquiry involved. Because, to be fair, there are secondary considerations involved in the obviousness case too, and that is highly factual. And our complaint about the secondary consideration is the board just didn't consider all of the relevant facts that would have undermined the secondary considerations case. So I think it is more fair to vacate and remand those obvious facts. And would I be right in thinking that on the secondary considerations, a ruling in your favor on the anticipation would have at least the following effect. There would be a question whether the commercial success was attributable to what's found in the anticipated claims, and therefore perhaps not much attributable to the other claims whose validity turns on obviousness but not anticipation. Yes, I think that's exactly right, Your Honor. It was the second point I was going to make, but thank you for bringing me back to that. We would have a closer, closest reference. And so the secondary considerations would need to turn on the difference between the closest prior art and the claimed embodiment, in which case, for example, for claims 24 to 26, that would be the voltage levels that were described there. It would no longer be what Syncor claims to be the genesis of surprising results, for example, separating isolation and regulation, which I think you already see in Stargill, Walden, and Pressman, but that's what Syncor claims. So you would have a closer piece of closest prior art, and the difference between the two would also become a benchmark with which you address the secondary considerations. What, if any, effect of, again by assumption for current purposes, agreeing with you about anticipation, would there be on the last obviousness ruling, the Cobos-Pressman? That's an interesting question because I think that the Steigerwald, own I know Steigerwald 594, would actually be closer than the closest prior art in that Cobos-Pressman combination. So I think for reviewing secondary considerations, you would still need to take the closest prior art into account. Steigerwald, own I know, in combination with Steigerwald 594 as an integrated document. So it would have some effect on it, although the underlying claim elements would still be taught by Pressman and by Cobos. Part of the board's reasoning, if I'm remembering correctly, and correct me if I'm wrong about Cobos-Pressman, was that there was no reason for somebody reading Cobos to look at Pressman because Cobos, that would be shifting to something less efficient. Did you make an argument that a reason would be found in, for example, space saving at some cost, minor cost in efficiency? No, we did not make an argument about the tradeoff between space saving and efficiency. Our argument was that the board actually found that Pressman teaches providing a multiplicity of outputs at high efficiency. And so that's a fact-finding by the board, which is subject to deference like every other fact-finding by the board. And when the board actually finds that, it can't find that there was hindsight because that is expressed motivation to combine. Is there something factually baseless about the idea that space saving might have been a motivation to sacrifice a little bit of efficiency? I guess I'm asking this because I thought in maybe both of the briefs, maybe it's just yours, I'm not sure, there was a back story of wanting to save space by not having what I guess you called bricks, many, many bricks, but having smaller components with consolidating, I guess the isolation piece of it in one box. That, I guess, raised a question in my mind as to whether there was a space-saving motivation or would have been for somebody reading Kobos to add Pressman, even recognizing that that might be walking away from a little bit or maybe some efficiency. Is that just off on a... I know I'm making that up since you said you didn't argue it, but I guess I'm trying to understand if there's a factual problem or just that you didn't argue that. No, I don't think there's a factual problem with that necessarily. As soon as you have the Pressman post-switching regulators that are not isolated, you save the isolation stage. That's perfectly well-disclosed in Pressman. The question is why would somebody with Kobos look at Pressman? Well, somebody with Kobos would look at Pressman because Pressman provides a two-stage architecture with a multiplicity of outputs. That's key because sometimes you want multiple outputs. It's a little bit different than the single output stage. But Pressman doesn't actually tell you how to implement that first stage. And Kobos provides an implementation for that first stage, which Kobos says is very efficient. So if you're taking Pressman and you say, I want a multiplicity of outputs, as in Figure 3.4b, Pressman says that's highly efficient. Now I need to implement that first stage. That's what Kobos tells you how to do in 1994. If you'd like to save your rebuttal. I will save my rebuttal sign. Thank you. Mr. Trella. Thank you, Your Honor. May it please the Court. The Board decided this case on the basis of a voluminous evidentiary record, extensive briefing, and a lengthy oral argument. Based on all of that, the Board found as a factual matter that Syncor's 190 patent was not anticipated and it was not obvious in light of the cited prior art. That decision is supported by substantial evidence in this record. The anticipation argument relied on really an attempt to piece together from different parts of the Stigerwald patents an embodiment that neither one expressly teaches. And the obviousness arguments relied on the assertion that a person of ordinary skill would have been motivated to combine various references in a way contrary to their teachings to produce a device that was inferior to the devices that they actually taught. I think as the earlier discussion indicated, at least in my mind, that the central issue here is what the Board did and could fairly do on the evidence with the two Stigerwald patents. Can you focus specifically on that? The other side's point is, did you agree, first of all, that the 090 shows everything except the swapping of the diodes? Yes, we have not argued to the contrary. Okay, so why is it not simply compelled by the 090's express incorporation of reference of a very small reference with, in fact, numeral numbers that appear to refer to a figure in the incorporated document? Why doesn't that essentially mean that the Board's contrary conclusion is lacking in substantial evidence? Here's why, Your Honor. First of all, there was an incorporation by reference, but as the Board found, and Vicar doesn't really challenge, the Board said that for purposes of discussion, it was assuming that the incorporation was sufficient to incorporate the text of Stigerwald 539 in the 090, but it went on to hold, and Vicar doesn't dispute, that there was no specific direction to incorporate any particular part of the 539 into any particular part of the 090. So essentially, it's like the two of them were stapled together with no expressed guidance. But this is partly why, at least, I have focused on the reference in the 090 to an embodiment with a numerical, a number 20, that doesn't appear in the 090 figures, unless I've missed something, which is possible. Well, let me say a couple of things about that, Your Honor. First of all, in the 539, I think it's important to look at exactly what this alternative embodiment statement, which is really the focus of Vicar's case, actually says. It says, in other alternative embodiments, and this is A61, Column 4, in other alternative embodiments, such as those of Figures 7 to 9, synchronous rectifiers SRA and SRB are used instead of diodes CRA and CRB of Figures 4 and 6. So it's directly saying you can modify the embodiment in Figures 4 and 6 and you can produce what we've got in 7 to 9. Obviously, it's not saying anything about the embodiment in the 090 patent. It's also not suggesting that you can go ahead and drop in synchronous rectifiers in place of diodes whenever you feel like it. It's talking about a very specific embodiment where you can make this switch. Now, as for the... But then, I'm sorry, when that same sentence says, and we're showing this in Figure 7, right, Figure 7 through 9? Yes. And those figures show only the isolating stage. They don't repeat, essentially, the regulating stage on the left side of Figure 4? That's correct. Suggesting that that's really pretty irrelevant to the substitution that's being contemplated. Well, it's irrelevant for those... I think you can assume it's irrelevant for those embodiments, but not necessarily for other embodiments, Your Honor. And let me say a couple of other things. First of all, these capacitance-multiplying circuits, notwithstanding the numeral 20, they're not identical. If you look at the one in the 090, it, in fact, provides positive and negative voltages. You see the plus V1, plus V1, plus V2, minus V1, minus V2. You don't see that in Steigerwald 539. So these circuits, whether the numeral applies to them or not, they are not identical. The other thing, Your Honor, is you can't ignore... Is there any chance, if you're explaining it in a way I would understand, why what you just said about the plus and the minus matters? I don't think that... I know that depends on your knowledge of what I would understand, but can you take a crack at it? All I can say, Your Honor, is just looking at the two, they're different. So I don't think you can just... My point is just that I think that just underscores that the reference in the 539 is dealing with a specific embodiment, namely the embodiment of figures 4 and 6, and you can't just automatically translate that to the 090 because they're not identical. And I think it's important, while there is this focus on this capacitance-multiplying circuit... But the board didn't provide any kind of explanation of why it would somehow affect the 090 to drop in the synchronous. Oh, I think it did, Your Honor. In a way that it wouldn't affect the 539 figure 4 to swap out. Well, what the board explained, Your Honor, was that there would be an efficiency hit if you tried to translate the 539 embodiment into the 090 embodiment. And the reason is the 090 uses linear regulators and expressly disclaims any inductors, which means it can't use switching regulators. And this was explained in detail in Dr. Schlecht's declaration before the board. If you made that substitution, there's no point to it because you actually end up losing efficiency because whatever efficiency you gain by dropping the synchronous rectifiers into the 090 embodiment, you lose because of the linear regulators. You can't use switching regulators there because the 090 patent expressly states you can't have inductance in the current patent. And that's what you'd have. And that's why the 539 is very different. The 539, because it uses the pre-regulator, it doesn't have that same issue because having a switching regulator out there doesn't induce inductance into the current path because the energy storing capacitor is at a different location in the 539 embodiment unlike the 090 where it's right at the input pins, which means that any inductance is going to be right in the current path. So that's why the board found, Your Honor, that these are discrete and separate embodiments. And you can't just take a direction, a suggestion or teaching, whatever you want to call it, in the 539 that says you can substitute synchronous rectifiers for diodes in the embodiment in Figure 4 and then automatically apply that to the embodiment in the 090. Are there other aspects of what's in the 539 that the 090's express incorporation might more plausibly be referring to? Frankly, Your Honor, I think if you look at the express incorporation, it's in the very first section of that patent. It's related applications. You think it's pro forma. I think it's absolutely pro forma, Your Honor. I don't think there's any indication anywhere in the 090 patent that that was an incorporation that was done for any specific purpose or to teach anything about the 090 invention or to suggest any modifications to the 090 invention. It was absolutely pro forma. It was basically, I've got these other applications. They deal with the same kind of stuff. I'm incorporating them by reference here. And that really ties into, and we're not disputing that there was incorporation here, but again, as the board found, there's no specific incorporation. It doesn't say you can look at the synchronous diode teaching in the 539 and that has relevance to the 090 or anything like that, which is usually the case in incorporation by reference cases. There's usually some specific link between the incorporating reference and the one being incorporated. Now, if I could touch on a couple of other points that Mr. Smith made. On the obviousness point, first of all, if there's no anticipation by the combined Steigerwald references, then there's really not much to say about the obviousness, the non-obviousness finding based on those references. But even with that, the board did find, and this is at Appendix 18 and also Appendix 22, dealing with the two different non-obviousness rulings, that the secondary considerations evidence was sufficient standing alone, even if the board had found, even if the examiner had established obviousness, the secondary considerations evidence was enough standing alone to require a finding of non-obviousness. So, although we obviously don't think that... quite take care of how you would do an obviousness analysis on the assumption that they were right about their anticipation, because then you would have a certain kind of arrangement with the synchronous rectifiers in the prior art. I understand that point. I would note, though, that the claims that were found to have been infringed in the litigation, and all of the commercial success and secondary considerations evidence pertinent there, too, were claims that are narrower than the claims that would be hypothetically found anticipated. So I think there still would be the nexus. Now, it may well be true, Your Honor, that you would still want to do the analysis, but I think the analysis would come out the same place because of the difference in the fact that the claims that were found infringed are narrower than the claims that hypothetically would be found anticipated. Now, if I could turn briefly to the Cobos and Pressman issue that Mr. Smith talked about, the primary basis for the Board's ruling there was that there would be absolutely no motivation for one of ordinary skill to modify Cobos by adding the Pressman non-isolated switching regulators onto it. The supposed motivation that BICOR had offered was somebody who's confronting Cobos would want to consider a way of providing multiple output voltages. Pardon me, Your Honor. But Cobos, as the Board explained, already disclosed how to do that in its own Figure 14a, and it was in a way much more efficient, 92% efficiency, compared to doing it the Pressman way, which isn't just slightly less efficient, but it's only got efficiency of 59%. So there would be absolutely no motivation for one of ordinary skill looking at these references to say, oh, I need multiple output voltages. I'm just going to take Pressman and staple it onto the Cobos isolation stage and do it that way. But Cobos taught a better way to do it right from the start. Can I ask you the same question I asked your opposite number? This idea of motivation from space saving, which I do not recall having seen, but why would it be wrong? Well, it would be... I'm not sure whether it would be wrong. I do know it wasn't argued, so it's not in the record. Also, there's no indication in either... Well, as you'd be looking at Pressman, there's no indication in Pressman that space saving would have been a motivation to take the huge efficiency hit that a two-stage process that Pressman taught, a two-stage process would have entailed. Pressman, in several places, says that single stage solutions, that is the combined isolation and regulation, are much more efficient than the two-stage processing because you have to handle the voltages twice and all of that. And there's no suggestion anywhere in that text, or in Cobos for that matter, that you would save board space. And in fact, if you think about it, Pressman's from 1977, so it's an old reference. Cobos is 17 years later. Cobos is 17 years later, and obviously the patents, the 190 patents even later than that. And it's not even clear, certainly it's not clear on this record, that space saving back in the Pressman era was even an issue because you didn't have, in that era, you didn't have the multiple different kinds of processes on a board. Right, but I'm not sure which way that cuts. Well. Because it could be by that time, 1997 comes along, and your inventors are doing what they're doing. The demand for saving space is now much greater. Right. And at that point, somebody thinking about Cobos would say, that's actually worth buying, buying some space at some cost of efficiency. You know, that's possible. I think on this record it's speculative. And certainly there's no teaching, and for the reasons I was explaining, there's no teaching anywhere like that in either Cobos or Pressman. And so basically you'd have to say on the basis of nothing in the record that somebody, a person of ordinary skill, would have been willing to take what Cobos and Pressman teach as a pretty substantial efficiency hit for the possibility of picking up some space saving. I see that I am out of time, if the court has any further questions. Thank you. Thank you. I have a couple of minutes. A few brief points. First of all, my counterpart talked about an efficiency hit that the board found in the anticipation case. As we pointed out in our briefing, they didn't actually find that. The board didn't find that. There's no explanation that it would be inefficient to combine the synchronous rectifiers of Steigerwald 539 with Steigerwald 090 in the anticipation case. In fact, that would be an obvious misargument. So if they did find that, it would be a further reason to reverse. Can you address Mr. Trella's explanation that the 539 suggestion to replace the diodes with the synchronous rectifiers made sense when the regulation was done before getting to that stage, not necessarily when the regulation is done afterwards? Yes. I think that explanation is completely wrong. And it's wrong because in Steigerwald 090, what it's based on, that argument is based on the linear regulators at the end. And what they're basically saying is there's two down conversions. One from, let's say, 48 volts to 12 volts, and then one from 12 to 5. And that last one from 12 to 5, because they're linear regulators, you essentially just burn off that extra 7 volts. Then what they're saying is if you put synchronous rectifiers into the first stage and that increases your efficiency, your transformation in the first stage will be 48 down to 13. But when you regulate it again, it goes 13 down to 5, and you just burn that off. That's why they're saying there's no efficiency. But that doesn't make any sense because if you could increase the efficiency at the first stage, you would still have your intermediate bus voltage be the same voltage. So it would still be 48 down to 12, but done in a more efficient way, the first stage would put out less heat. And you can do that very simply as a person of ordinary skill in the art by just changing the number of turns in the transformer, changing the transformer turns ratio, which is discussed in column one of Steigerwald 539 and in column two, I think, of Steigerwald 099. Both of them discuss how the turns ratio affects the voltages on the input and output side. So I think technically that argument is just wrong. In the 15 seconds I have left, I just wanted to point out in the secondary considerations argument, I don't think the board found all of the secondary considerations arguments that SYNCOR actually made. The only thing the board found was commercial success. They left a lot of disputed evidence on the table and the problem with that is among those disputes are an explanation of why the commercial success happened that does not lead to an inference of non-obviousness and also a dispute which indicates that if FICOR is correct on that evidence, the inventions are actually obvious. So we have secondary considerations that point to obviousness as well. Thank you. Thank you very much. Case is submitted.